UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

DELANEY EQUITY GROUP, LLC,

    Plaintiff,

v.

    Case No.

MCIG, INC.

    Defendant.

_____/

## COMPLAINT

Delaney Equity Group, LLC ("**DEG**" or "**Plaintiff**"), hereby files suit against mCig, Inc. ("**MCIG**" or "**Defendant**") and alleges as follows:

### INTRODUCTION

1. DEG and MCIG entered into a Securities Purchase Agreement (the "**Agreement**") dated April 14, 2014. DEG purchased 750,000 restricted shares of common stock for $300,000 or .40 per share from MCIG.

2. Pursuant to the Agreement, DEG was entitled to a "Purchase Price Reset" in the event that MCIG issued or sold any shares of common stock within 12 months after the date of the Agreement (the "**Protection Period**") at a price less than what DEG paid for the stock. In other words, MCIG was required to issue additional shares of common stock to DEG in Florida as if DEG had purchased it at the lower price.

3. As discussed herein, MCIG issued and/or sold common stock at a significantly lower price to various third parties within the Protection Period. For example, in July 2014, MCIG issued 252,055 shares of common stock to its Chief Operating Officer for a fair value of $20,921 or .083 per share. According to the Agreement, DEG was entitled to an additional 2,864,458

1

shares of common stock of MCIG as a result of the issuance of stock at .083 to the employee. Considering the stock has traded between .33 and .48 per share during the month of February 2017, DEG has been and continues to be damaged as a result of MCIG's failure to deliver the additional common stock to DEG per the terms of the Agreement.

## PARTIES

4. Plaintiff DEG is a Florida limited liability company. Its principal place of business is located at 2401 PGA Blvd., Suite 110, Palm Beach Gardens, Florida, 33410. DEG is a registered broker-dealer with the Securities and Exchange Commission.

5. Defendant MCIG is a Nevada Corporation. It is a public company registered with the Securities and Exchange Commission and its stock trades on the OTC Markets under the symbol MCIG. Its principal place of business is located at 2831 St. Rose Parkway, Suite 200, Henderson, Nevada, 89052.

## JURISDICTION AND VENUE

6. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7. This Court has personal jurisdiction over non-resident Defendant MCIG under the Florida Long Arm Statute, Fla. Stats. § 48.193, because, among other things and as alleged herein, MCIG is (1) continuously and systematically operating, conducting, engaging in, or carrying on a business or business venture in Florida, including but not limited to, through its wholly-owned subsidiaries VitaCig, Inc. and mCig Internet Sales, Inc. and (2) breaching a contract in this state by failing to perform acts required by the contract to be performed in Florida. Based upon its general and specific contacts with the State of Florida, MCIG purposely availed itself of the

privilege of conducting activities within Florida and has established minimum contacts with the State of Florida.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1391.

## FACTUAL BACKGROUND

9. On April 14, 2014, DEG and MCIG entered into the Agreement, which is attached hereto as Exhibit A. DEG purchased 750,000 shares of restricted, common stock of MCIG for an aggregate purchase price of $300,000 or .40 per share. In connection with the transaction, MCIG delivered to DEG in Florida an executed copy of the Agreement and a certificate evidencing the number of shares of common stock purchased by DEG.

10. The Agreement contained a provision called the "Purchase Price Reset." This provision required the issuance of additional common stock to DEG at no additional consideration in the event that MCIG issued or sold any shares of common stock within the Protection Period at a price lower than it sold to DEG. Specifically, Section 4.4 of the Agreement provides in relevant part:

> Purchase Price Reset. From the date of this Agreement until the later of 12 months after the Initial Closing Date (the "Protection Period"), in the event that the Company issues or sells any shares of Common Stock or any Common Stock Equivalent pursuant to which shares of Common Stock may be acquired at a price less than the Per Share Purchase Price (a "Share Dilutive Issuance"), then the Company shall promptly issue additional shares of Common Stock to the Purchaser who held outstanding Shares on the date of the Share Dilutive Issuance, for no additional consideration, in an amount sufficient that will equal the price per share of Common Stock in such Share Dilutive Issuance.

11. The Agreement provided a formula to determine the additional amount of common stock to be issued to DEG in Florida. The formula is the amount of money paid to MCIG, divided by the lower price in connection with the issuance or sale of stock to a third party, minus the shares already delivered. It also provided that the additional shares of common stock were to be delivered to DEG on the same date MCIG issued or sold the common stock to a third party.

12. DEG maintained ownership of the 750,000 shares it purchased in April 2014 during the entire Protection Period.

13. According to the MCIG's public filings, it issued and/or sold common stock to third parties at a lower price than it sold to DEG during the Protection Period.

14. As noted above, on July 15, 2014, MCIG issued 252,055 shares of common stock to its Chief Operating Officer at a fair value price of $20,921 or .083 per share. As a result and per the formula set forth in the Agreement, DEG was entitled to receive an additional 2,864,458 shares of common stock of MCIG.[1]

15. MCIG also issued common stock to consultants during the Protection Period. For example, on October 31, 2014, MCIG issued 1,022,353 shares to a consultant at a fair value price of $152,893 or .149 per share.

16. MCIG disclosed the sale and/or issuance of common stock to third parties in its Form 10Q for the period ending January 31, 2015. MCIG disclosed "[d]uring the nine months ended January 31, 2015, the Company issued 2,851,495 shares of common stock as compensation. The shares were issued from the Company. The fair values of the shares were a total of $406,661 and were recorded at the market price on the date of the grant." More specifically, MCIG stated that it issued the following shares to consultants: (1) 531,621 shares at a fair value of $85,325 on December 9, 2014; (2) 1,306,050 shares at a fair value of $168,481 on December 31, 2014; and (3) 1,013,824 shares at a fair value of $152,854 on January 31, 2015. Stated differently, MCIG issued common stock to these consultants at .160, .129, and .151, respectively, on a price per share basis.

---

[1] Based upon MCIG's issuance of stock at .083 per share on July 15, 2014, the formula is $300,000/.083 − 750,000, which equals 2,864,458.

17. MCIG also sold stock to an individual investor during the Protection Period. According to MCIG's public filings, it sold $714,286 shares at a fair value of $100,000 or .14 per share.

18. On November 28, 2014, MCIG completed the spin-off of VitaCig, Inc. ("**VitaCig**"). MCIG distributed shares of common stock of VitaCig to holders of MCIG's stockholders of record as a pro rata dividend. MCIG stockholders received one share of VitaCig common stock for every one share of common stock of MCIG. The shares of common stock to be received by MCIG shareholders were registered on a Form S-1 filed by VitaCig and declared effective by the Securities and Exchange Commission on November 5, 2014.

19. Since DEG was entitled to additional shares of MCIG prior to the spin-off of VitaCig and held MCIG's stock throughout this time period, it should have also received additional shares of VitaCig on or about November 28, 2014.

20. Based upon the issuance and/or sale of common stock to third parties during the Protection Period, DEG was entitled to additional shares of MCIG. As alleged above, MCIG has issued and/or sold shares on multiple occasions to multiple parties ranging from .08 to .16 per share. DEG, however, has not received any additional common stock it was entitled to receive per the terms of the Agreement.

## COUNT I
### Breach of Contract

21. DEG re-alleges each and every allegation contained in Paragraphs 1 through 20 of this complaint as if set forth fully herein.

22. DEG and MCIG entered into the Agreement on April 14, 2014.

23. MCIG issued and/or sold shares of common stock to third parties at a lower price than it sold to DEG during the 12 month period following the closing of the Agreement. DEG,

therefore, was entitled to receive additional share of MCIG. In turn, DEG would have been entitled to receive additional shares of VitaCig as a result of the spin-off.

24. MCIG breached the terms of the Agreement by failing to deliver additional common stock to DEG in Florida as set forth in the Agreement.

25. DEG has been damaged as a result of the breach of the Agreement.

WHEREFORE, DEG asks this Court to enter judgment against Defendant MCIG requiring it to deliver to DEG the shares it is entitled to receive per the terms of the Agreement and/or for damages in an amount to be determined at trial, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## COUNT II
### Unjust Enrichment

26. DEG re-alleges each and every allegation contained in Paragraphs 1 through 20 of this complaint as if set forth fully herein.

27. Defendant has been unjustly enriched at the expense of DEG.

28. Defendant received $300,000 from DEG in connection with the sale its stock. It received a benefit from DEG and retained the money and additional shares that should have been issued and delivered to DEG.

29. Defendant knowingly and voluntarily accepted and retained a benefit in the form of that money and shares that should have been issued and delivered to DEG.

30. The circumstances alleged in this complaint render Defendant's retention of that benefit inequitable and unjust so Defendant must deliver the shares to DEG and/or pay DEG the value of the benefit received.

WHEREFORE, DEG asks this Court to enter judgment against Defendant MCIG requiring it to deliver to DEG the shares it is entitled to receive per the terms of the Agreement and/or

damages in the amount of money and shares retained by Defendant, together with interest and costs, and for such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMAND

Plaintiff demands a jury trial on all claims.

s/ Michael S. Lamont
Michael S. Lamont
Florida Bar No. 0527122
mlamont@wiandlaw.com
George Guerra
Florida Bar No. 0005762
gguerra@wiandlaw.com
Kimberly Koves
Florida Bar No. 100282
kkoves@wiandlaw.com
WIAND GUERRA KING P.A.
5505 West Gray Street
Tampa, FL  33609
Tel. 813-347-5100/Fax 813-347-5155

*Attorneys for Delaney Equity Group, LLC*